**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TIMOTHY G. MARTIN, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED BRIDGE CAPITAL, LP; UNITED BRIDGE CAPITAL FUNDING 3, LLC; CFAI SPECIAL ASSETS, LLC; CHURCHILL REAL ESTATE HOLDINGS LLC; JUSTIN EHRLICH; SARPER C BEYAZYUREK; S. TRAVIS MASTERS; SORABH MAHESHWARI; and TODD BILLINGS, <br><br> *Defendants.* | No. 3:20-cv-00081-KAD <br><br><br><br><br><br><br><br><br> NOVEMBER 16, 2020 |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

This case involves a delinquent mortgage loan secured by a residence in Massachusetts. Plaintiff Timothy Martin is the sole member of the limited liability company that purchased the residence and secured the mortgage. Plaintiff alleges that Defendants—the original lender of the mortgage loan, entities to whom the loan has allegedly been transferred/sold, and various individuals affiliated with these entities—have violated usury laws, committed a fraudulent transfer, and engaged in a conspiracy. As demonstrated below, all of these claims fail as a matter of law, and therefore the case should be dismissed in its entirety pursuant to Rule 12(b)(6). Moreover, this Court lacks personal jurisdiction over Defendants Sarper C. Beyazyurek, Todd Billings, Justin Ehrlich, Sorabh Maheshwari, and S. Travis Masters (collectively, "Individual Defendants"). Accordingly, claims against the Individual Defendants must be dismissed pursuant to Rule 12(b)(2).

## BACKGROUND

Plaintiff's Complaint (ECF #1) contains the following allegations. Plaintiff is a Connecticut resident who is the sole member of a domestic limited liability company called College Degree Express LLC ("College Degree").[1] Compl. at Parties Section ¶ 1, Facts Section ¶¶ 2–4, 6. In January 2018, College Degree purchased a residence located in Glendale, Massachusetts. As part of the transaction, College Degree borrowed $477,000 from Defendant United Bridge Capital, LP ("United Bridge") which included a certain amount of prepaid interest. Compl. at ¶ 2.[2] The loan was secured by a mortgage on the Glendale residence. *Id.* ¶ 3. Thereafter, United Bridge "transferred . . . ownership of the note and mortgage" to Defendant United Bridge Capital Funding 3, LLC ("United Bridge Capital Funding 3"). *Id.* ¶ 8.

According to Plaintiff, there was some confusion regarding the amount of prepaid interest. Plaintiff believed that there was sufficient prepaid interest to cover one full year of payments. *Id.* ¶¶ 2, 11. But United Bridge stated that there was not sufficient prepaid interest to cover a full year. In September 2018, a United Bridge representative (whom "Plaintiff believes to be Defendant Todd Billings") told Plaintiff that the prepaid amount had run out and that the loan was now in default due to Plaintiff's non-payment. *Id.* ¶ 11, 12. This United Bridge representative allegedly told Plaintiff that the default interest rate of the loan was in excess of

---

[1] College Degree is not a party to this lawsuit. For purposes of this motion to dismiss only, Defendants assume that Plaintiff has standing to assert claims on behalf of College Degree, given that he is allegedly the sole member of this limited liability company. *See Saunders v. Briner*, 334 Conn. 135, 176, 221 A.3d 1 (2019) ("[W]e conclude that the trial court may permit the member of a single-member limited liability company to bring an action raising derivative claims as a direct action and may order an individual recovery if it finds that to do so will not (1) unfairly expose the company or defendants to a multiplicity of actions, (2) materially prejudice the interests of creditors of the company, or (3) negatively impact other owners or creditors of the company by interfering with a fair distribution of the recovery among all interested parties."). If this case proceeds past this motion to dismiss—and it should not for all the reasons stated herein—then Defendants reserve the right to revisit the issue of Plaintiff's standing if warranted based on further factual development.

[2] Unless otherwise specified, all citations to the Complaint refer to the numbered paragraphs in the Facts Section (as opposed to the numbered paragraphs in the Parties Section).

45%, although Plaintiff does not allege that he was actually charged this interest rate. *Id.* ¶ 12. According to the allegations of Plaintiff's Complaint, United Bridge Capital Funding 3 could not charge such a rate because it had not "registered as required" with the Massachusetts Attorney General.[3] *Id.* ¶¶ 15, 17. In a purported effort to "veil and conceal" the alleged failure to register and to "evade" Massachusetts usury law, United Bridge Capital Fund 3 transferred the note and mortgage back to United Bridge. *Id.* ¶ 17–18.

Sometime later, the note and mortgage were transferred in an "'arm's length' transaction" to Defendant CFAI Special Assets, LLC ("CFAI"), which Plaintiff (incorrectly) alleges is "owned and controlled" by Churchill Real Estate Holdings, LLC ("Churchill").[4] *Id.* ¶¶ 22–23. Plaintiff contends that this was "a fraudulent transfer for the sole purpose of concealing the unlawful and usurious actions of the previous owners." *Id.* ¶ 23. In August 2019, Plaintiff was contacted by defendant Sarper C. Beyazyurek (allegedly a representative of CFAI and Churchill) who stated that CFAI and Churchill were going to proceed with a foreclosure in view of Plaintiff's continued non-payment. Indeed, a foreclosure was scheduled at the time Plaintiff filed his Complaint. Compl. ¶ 7.[5]

Based on these factual allegations, Plaintiff's Complaint can be read liberally and charitably to assert the following causes of action: violations of state and federal usury laws (Count One); fraudulent transfer (Count Two); and conspiracy (Count Two). Plaintiff also contends—in a conclusory manner, without any supporting facts—that the Individual defendants

---

[3] In fact, this legal conclusion is wrong and arises from a misunderstanding of Massachusetts law. *See* Argument Section II *infra*.

[4] Contrary to Plaintiff's allegations, Churchill does not own or control CFAI. These are separate entities with separate ownership structures and business plans. Churchill is therefore not a proper party to this action.

[5] The Complaint alleges that "[t]here is a planned foreclosure auction of the Glendale residence scheduled for 1/21/*2010*." Compl. ¶ 7 (emphasis added). Presumably, the identified year (2010) is a typographical error.

"are also liable under the doctrine of responde[a]t superior as controlling officers of the Defendant corporations." *Id.* ¶ 26.

All Defendants now move to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b).

## ARGUMENT

### I.   Standard for Motion to Dismiss

The standards governing a Rule 12 motion to dismiss are well-settled. As relevant here, a motion to dismiss can be used to challenge "lack of personal jurisdiction" over defendants (Fed. R. Civ. P. 12(b)(2)) and plaintiff's "failure to state a claim upon which relief can be granted" (Fed. R. Civ. P. 12(b)(6)).

With respect to a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The plaintiff therefore must make a prima facie showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). And that "prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* While it is true that "'all factual disputes are resolved in plaintiff's favor'" at this juncture, where (as here) defendants present declarations in support of their personal jurisdiction arguments, the Court must also consider that "'presentation by the moving party.'" *See, e.g.*, *Rafi v. Yale Univ. Sch. Of Med.*, No. 3:18-cv-635(AWT), 2020 WL 4339474, at *2 (D. Conn. July 28, 2020) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993), *as amended* (May 25, 1993)).

With respect to a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept factual allegations in the complaint, although a complaint will not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court has explained, the "plausibility" requirement is "not akin to a probability requirement," but rather it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (noting that a valid claim must cross "the line between possibility and plausibility"). In addition, a complaint cannot rely on "'conclusory allegations'" or "'legal conclusions couched as factual allegations.'" *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)). So it is that "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Hernandez*, 939 F.3d at 198 (quoting *Iqbal*, 556 U.S. at 678).

These standards apply even where (as here) a plaintiff is proceeding *pro se*. To be sure, the allegations of a *pro se* plaintiff's complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010). "Notwithstanding the rule of liberal interpretation of a *pro se* complaint," the complaint is still subject to "dismissal if its factual allegations do not meet the basic plausibility standard." *See Galarza v. Erfe*, No. 3:18-CV-00663 (JAM), 2020 WL 5501239, at *3 (D. Conn. Sept. 11, 2020) (citing *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015)).

**II.     Plaintiff Fails to State a Viable Claim of Usury Under Federal or State Law.**

Plaintiff alleges that the loan he signed contained a default interest rate in excess of 45%, and he contends that this rate constitutes usury under federal law and Massachusetts state law.[6]

---

[6] Plaintiff does not allege that he has actually been charged this default interest rate.

*See* Compl., Count I. However, Plaintiff fails to state a claim because (1) federal law is inapplicable to his loan and (2) Massachusetts law permits the default interest rate under the circumstances alleged here.

The federal usury law claim can be disposed of quickly because federal law does not apply to the transaction at issue here. Generally, interest and usury laws are left to the states, although Congress has enacted usury statutes that address a limited type of transaction: loans by national banks.[7] *See* 12 U.S.C. §§ 85 and 86; *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9–10 (2003) (noting that sections 85 and 86 together "provid[e] an exclusive federal cause of action for usury against national banks"). Plaintiff contends that in his Complaint that Defendants violated 12 U.S.C. § 85. *See* Complaint heading at page 2. But that statute and its companion statute, 12 U.S.C. § 86, apply only to national banks. *See, e.g.*, *Mamot Feed Lot & Trucking v. Hobson*, 539 F.3d 898, 902 (8th Cir. 2008) (discussing rule and citing authority); *Vargas v. Choice Health Leasing*, No. 09 CIV. 8264 DLC, 2010 WL 3398482, at *5 (S.D.N.Y. Aug. 26, 2010) ("Sections 85 and 86 apply only to 'national banking associations' as that term is defined in 12 U.S.C. § 37."). Plaintiff does not allege—nor could he allege—that any of Defendants are national banks. Rather, Defendants are limited liability companies, a limited partnership, and individuals. Accordingly, federal usury law is inapplicable, and this Court must therefore apply state usury law. *See* 36 C.J.S. Federal Courts § 227 (noting that "the question of interest" is a generally a quintessential "matter of local [i.e., state] law" and "[u]nless a federal question is involved . . . federal courts apply state law to issues involving interest and usury").

Turning to state law, Plaintiff contends that Defendants violated Massachusetts usury law. This claim fares no better than the federal law claim because the allegations of the

---

[7] National banks are "corporate entities chartered not by any State, but by the Comptroller of the Currency of the U.S. Treasury." *Wachovia Bank v. Schmidt,* 546 U.S. 303, 306 (2006).

Complaint do not set forth a violation of the Massachusetts law.[8] The applicable statute is the Massachusetts criminal usury statute, Mass. Gen. Laws ch. 271, § 49. Section (a) of the statute caps the allowable amount of interest and expenses that a lender may contract for at 20%. Mass. Gen. Laws ch. 271, § 49(a).[9] Section (c), in turn, provides that "[a]ny loan at a rate of interest proscribed under the provisions of paragraph (a) may be declared void by the . . . court in equity upon petition by the person to whom the loan was made." *Id.* § 49(c).[10]

Notwithstanding these provisions, a lender "'may register with the Attorney General [of Massachusetts], and then charge more than twenty per cent a year for interest and expenses.'" *In re Loucheschi LLC*, 471 B.R. 777, 782 (Bankr. D. Mass. 2012) (quoting *Begelfer v. Najarian*, 381 Mass. 177, 173, 409 N.E.2d 167 (1980)). That option is set forth in section (d) of the statute, which provides in pertinent part that "[t]he provisions of paragraph[s] (a) [and] (c) . . . shall not apply to any person who notifies the attorney general of his intent to engage in a transaction or

---

[8] Plaintiff pleads his claim pursuant to Massachusetts law and cites the specific Massachusetts statute that he alleges was violated: Mass. Gen. Laws ch. 271, § 49. *See* Compl. heading at page 2 and Count I. For purposes of this motion to dismiss only, Defendants assume that Massachusetts law would apply to this claim given that the subject residence is located in Massachusetts. It should be noted that even if Connecticut law applied (since Plaintiff is a resident of Connecticut and College Degree is a Connecticut limited liability company), Plaintiff's usury claim would still fail. Although Connecticut generally prohibits loaning money at an interest rate greater than 12%, *see* Conn. Gen. Stat. § 37-4, there are several exceptions to that general rule including—as relevant here—that the maximum interest rate does not apply to "any bona fide mortgage of real property for a sum in excess of five thousand dollars," *see* Conn. Gen. Stat. § 37-9(3). The loan alleged in Plaintiff's Complaint is a "bona fide real estate mortgage loan of over $5,000" that is "exempt from the purview of § 37-4 [the usury statute]." *See Ferrigno v. Cromwell Dev. Assocs.*, 244 Conn. 189, 192, 708 A.2d 1371 (1998).

[9] Section (a) provides in pertinent part:
Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury and shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than ten thousand dollars, or by both such fine and imprisonment.
Mass. Gen. Laws ch. 271, § 49(a).

[10] This does not mean that the usurious loan *must* be declared void in its entirety. To the contrary, Massachusetts courts have repeatedly affirmed that "the judge is afforded discretion to fashion an equitable remedy for the statute's violation." *Clean Harbors, Inc. v. John Hancock Life Ins. Co.*, 64 Mass. App. Ct. 347, 366, 833 N.E.2d 611 (2005); *see also Beach Assocs., Inc. v. Fauser*, 9 Mass. App. Ct. 386, 394, 401 N.E.2d 858 (1980) ("It was within the discretion of the judge, based upon all the facts, circumstances, and conditions surrounding the loan, to void it, to rescind it, to refund, to credit any excessive interest paid, to reform the contract, or to provide any other relief consistent with equitable principles.").

transactions which, but for the provisions of this paragraph, would be proscribed under the provisions of paragraph (a) providing any such person maintains records of any such transaction." Mass. Gen. Laws ch. 271, § 49(d). Thus, there is no prohibition in Massachusetts on lending at any interest rate above 20% for a lender who notifies the Attorney General's office of intent to make such a loan and keeps records of the transaction. *See, e.g.*, *RFF Family P'ship, LP v. Link Dev., LLC*, 932 F. Supp. 2d 213, 224 (D. Mass. 2013); *Levites v. Chipman*, 30 Mass. App. Ct. 356, 361–62, 568 N.E.2d 639 (1991).

Applying this legal framework here, it is clear that Plaintiff has not stated a viable usury claim against the original lender United Bridge. Plaintiff does not allege—nor could he allege—that United Bridge failed to register with the Massachusetts Attorney General's office concerning its intent to enter into a loan with an interest rate above 20%. To the contrary, Plaintiff expressly alleges that United Bridge *did* register as required. *See* Compl. § 17. Additionally, Plaintiff does not allege—nor could he allege—that United Bridge failed to keep records of the transaction. A loan is "immune from attack as usurious" where the lender complies with the registration requirement and "records were apparently kept." *Levites*, 30 Mass. App. Ct. at 361–62. Thus, a usury claim against United Bridge fails as a matter of law.

To the extent that Plaintiff asserts Massachusetts state law usury claims against United Bridge Capital Funding 3 or CFAI (the entities to whom the loan was allegedly later transferred), those claims too must fail. The Massachusetts usury statute does not contain any express requirement that persons or entities who are not the original lender (but subsequently acquire a loan) must register with the Attorney General under section (d) of the statute.[11] It is true that section (b) of the statute sets forth criminal penalties for one who "with knowledge of the

---

[11] Plaintiff alleges that United Bridge Capital Funding 3 did not register with the Attorney General, *see* Compl. ¶ 17, but the Complaint offers no allegations about CFAI's registration.

contents thereof, possesses any writing, paper, instrument or article used to record a transaction proscribed under the provisions of paragraph (a)." Mass. Gen. Laws ch. 271, § 49(b). While there is apparently no case law interpreting this particular section, it is clear on the face of the statute that, for there to be any crime by one who "possesses any writing, paper, instrument or article," the underlying transaction must have been "proscribed under the provisions of paragraph (a)." *Id.* Here, the transaction was not "proscribed under the provisions of paragraph (a)" and so section (b) is inapplicable.[12] In other words: because the lender (United Bridge) complied with the statute and there therefore is no usury claim against the lender, there is also no usury claim against those to whom the lender later transferred the loan (United Bridge Capital Funding 3 and CFAI).

This conclusion is reinforced by the long-accepted principle that a loan that was not usurious when made cannot become usurious due to subsequent assignment. *See, e.g.*, *Gaither v. Farmers' & Mechs. Bank of Georgetown*, 26 U.S. (1 Pet.) 37, 43 (1828) ("[I]f the note [is] free from usury, in its origin, no subsequent usurious transactions respecting it, can affect it with the taint of usury."); *Nichols v. Fearson*, 32 U.S. (7 Pet.) 103, 109 (1833) (noting that a "cardinal rule[ ] in the doctrine of usury" is that "a contract, which, in its inception is unaffected by usury, can never be invalidated by any subsequent usurious transaction"); *In re Rent-Rite Superkegs W., Ltd.*, 603 B.R. 41, 66 (Bankr. D. Colo. 2019) ("[I]f the interest rate in the original loan agreement was non-usurious, the loan cannot become usurious upon assignment — so, the assignee lawfully may charge interest at the original rate.").[13]

---

[12] As explained above, a loan with an interest rate above 20% that would otherwise be usurious under section (a) is rendered entirely lawful so long as the lender registers and maintains records pursuant to section (d).

[13] Defendants recognize that a 2015 decision from the United States Court of Appeals for the Second Circuit did not follow this general rule in the unique context of a loan by a national bank that was later transferred to an entity that was not a national bank. *See Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015). The *Madden* case involved the scope of federal preemption pursuant to the National Bank Act and is not instructive in

For all these reasons, Plaintiff's usury claim fails as a matter of law and should be dismissed pursuant to Rule 12(b)(6).[14]

### III.   Plaintiff Fails to State a Claim for Fraudulent Transfer.

Plaintiff faults the alleged transfers of the note: (a) from United Bridge Capital Funding 3 back to the original lender United Bridge: and (b) from United Bridge to CFAI. The Complaint states that each of these actions was a "fraudulent transfer"—the first transfer was made with "the sole purpose" of "evad[ing]" the usury law, and the second transfer was "for the sole purpose of concealing the unlawful and usurious actions of the previous owners and Defendants." Compl. ¶¶ 18, 23, and Count II generally. These allegations do not state a claim for fraudulent transfer.

The doctrine of fraudulent transfer (sometimes referred to as fraudulent conveyance) is designed to address a situation where a debtor transfers property with the intent to impede collection by a creditor. *See, e.g.*, 37 C.J.S. Fraudulent Conveyances § 1 ("A proceeding to set aside a fraudulent transfer is in furtherance of a prohibition against illicit transfers of property to secrete it from creditors as a matter of public policy."). Such a claim can be asserted under common law or the Uniform Fraudulent Transfer Act ("UFTA"), which has been adopted in both Massachusetts and Connecticut. *See* Mass. Gen. Laws ch. 109A; Conn. Gen. Stat. § 52-552a *et seq*.[15] In both states, a plaintiff asserting fraudulent transfer claim must show "(1) that he is a

---

the different circumstances of this case which does not involve a national bank or issues of federal preemption. *See generally id.*

[14] The heading of the Complaint mentions the Massachusetts Consumer Protection Act, Mass Gen. Laws ch. 93A (Chapter 93A"). *See* Compl. heading at page 2. However, this cause of action is never mentioned again, and the Complaint contains no allegations whatsoever concerning a Chapter 93A claim. Presumably, Plaintiff mentioned Chapter 93A because a violation of the Massachusetts usury statute constitutes a per se violation of Chapter 93A. *See In re Pena*, 397 B.R. 566, 577 (B.A.P. 1st Cir. 2008). Here, there is no violation of the Massachusetts usury statute, and so, in turn, there is no violation of Chapter 93A based on the usury statute.

[15] Because Massachusetts and Connecticut law are the same for purposes of analyzing Plaintiff's fraudulent transfer and conspiracy claims, there is no need to perform a choice of law analysis.

creditor and (2) that defendant fraudulently transferred the property." *Alford v. Thibault*, 83 Mass. App. Ct. 822, 827, 990 N.E.2d 93 (2013). A transfer is fraudulent if, for example, "the debtor made the transfer . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor." Conn. Gen. Stat. § 52-552e; Mass. Gen. Laws ch. 109A, § 5.

Plainly, the circumstances alleged here do not fit the framework of a fraudulent transfer claim. Defendants are not debtors trying to evade collection on a debt they incurred by fraudulently transferring their property; rather, Defendants are creditors who have tried repeatedly to collect a debt owed to them. A diligent search has failed to surface any authority for the proposition that a fraudulent transfer claim can be based on the transfer/sale of the right to collect a loan as part of an effort to evade usury laws. Even if such a claim were theoretically cognizable (and it is not), there was no such transfer to evade usury laws here. As explained in Section II above, the loan at issue here does not violate the usury laws.

### IV. Plaintiff Does Not State a Cognizable Conspiracy Claim Because There Is No Viable Underlying Tort Claim.

The Complaint asserts a conspiracy claim based on alleged agreement and coordination by Defendants "to enforce the usurious note and mortgage, conceal the usurious acts and fraudulently transfer the note and mortgage for this purpose." Compl. ¶ 24 and Count II generally.

It is axiomatic that a conspiracy claim must be based on an underlying tort. *See, e.g.*, *Bartle v. Berry*, 80 Mass. App. Ct. 372, 383–84, 953 N.E.2d 243 (2011) ("To prove their claims for civil conspiracy, the plaintiffs must show an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement."); *Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 635–36, 894 A.2d 240 (2006) (describing "the principle that there must be an underlying tort for the viability of a civil conspiracy claim" and

noting that "[t]o state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort"). Where the underlying tort claim fails as a matter of law, then the civil conspiracy claim based upon that underlying tort also fails as a matter of law. *See, e.g.*, *Bartle*, 80 Mass. App. Ct. at 383–84 ("For the requisite underlying tortious act, the plaintiffs rely on the same allegations underpinning their claim of tortious interference. We already have concluded, however, that [the tortious interference claim failed]. Accordingly, the plaintiffs' claims that the defendant attorneys conspired against them necessarily fails."); *Server v. Drust Markets, LLC*, No. CV175007407S, 2018 WL 6132538, at *5 (Conn. Super. Ct. Nov. 8, 2018) ("Even before the court gets to the elements of civil conspiracy, the counts fail because the [underlying tort claims] to which they may have attached have failed. Consequently, [the conspiracy claims] cannot stand as independent causes of action and the motion to strike each count is granted."). Here, Plaintiff's underlying tort claims (usury and fraudulent transfer) fail as a matter of law, *see* Sections II and II above, and so the conspiracy claim necessarily fails, as well.

Even if there were a viable underlying tort (and there is not), the claim would still fail because Plaintiff does not adequately plead a conspiracy. To be sure, Plaintiff recites the basic elements of a conspiracy claim—as the Complaint puts it, "[a]ll the Defendants (a) had an object to be accomplished; (b) had an agreement on the object or course of action; (c) performed one or more unlawful overt acts; and (d) caused damages that were a direct result of those acts." Compl. ¶ 25. And Plaintiff states that he "has knowledge and believes that all of the named defendants conspired." *Id.* ¶ 24. But these "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim. *See, e.g.*, *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

12

The only factual allegation supporting the conspiracy claim is Plaintiff's contention that he "has knowledge and belief that the transfer of the note and mortgage to CFAI . . . was an 'arm's length' transaction." Compl. ¶ 23. But this allegation is of little moment. An arm's length transaction is simply a "dealing between two parties who are not related or not on close terms and who are presumed to have roughly equal bargaining power." Black's Law Dictionary (11th ed. 2019). Nothing about such a common-place commercial transaction suggests the existence of a conspiracy.

### V. This Court Does Not Have Personal Jurisdiction Over the Individual Defendants. Even if There Were Personal Jurisdiction, Plaintiff Fails to State a Claim Against the Individual Defendants.

Not content to pursue his claims against the corporate Defendants, Plaintiff improperly decided to name five Individual Defendants. The only allegations in the Complaint about these Individual Defendants is as follows:

(1) Plaintiff believes that he was contacted by Billings (allegedly a representative of United Bridge and United Bridge Capital Funding 3) about the loan on one occasion in September 2018. Compl. ¶¶ 11–12.

(2) Plaintiff was contacted by Beyazyurek (allegedly a representative of Churchill and CFAI) about the loan on one occasion in August 2019. Compl. ¶¶ 20–21.

(3) All the Individual Defendants are residents of other states and are officers of the corporate Defendants. Compl. at Parties Section ¶¶ 5–9, Facts Section ¶ 26.

These allegations are supplemented by declarations (submitted herewith as Exhibits 1–5) from each of the Individual Defendants. Based on the Plaintiff's Complaint, the factual record established by the declarations, and the governing law, the Individual Defendants now move for

dismissal pursuant to Rule 12(b)(2) on the basis that this Court lacks personal jurisdiction over them.[16]

The two-part framework governing a personal jurisdiction motion is well-established: "[i]n diversity . . . cases the court must look first to the long-arm statute of the forum state, in this instance, [Connecticut]. . . . If the exercise of jurisdiction is appropriate under that statute, the court must then decide whether such exercise comports with the requisites of due process." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997).

As for the first step, the long arm statute of the state where the District Court sits is Conn. Gen. Stat. § 52-59b ("Jurisdiction of courts over nonresident individuals"), which states in relevant part:

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer . . . or a computer network . . . located within the state.

This statute does not provide a basis for exercising jurisdiction here.

To begin, section (a)(1) does not apply because the Individual Defendants do not "transact[ ] any business within the state." The term "transacts any business" embraces a "single

---

[16] It should be noted for the record that at least some of the individual Defendants were not properly served with process. *See* Proofs of Service at ECF #22 (containing no Proof of Service with respect to Beyazyurek, and indicating that Masters, Ehrlich, and Maheshwari were improperly served by leaving the Summons and Complaint with an unnamed employed at CFAI's office). Nevertheless, in the interest of finality, Defendants request that the Court rule with respect to their personal jurisdiction and failure-to-state-a-claim arguments.

purposeful business transaction" by anyone who has "invoked the benefits and protections of Connecticut's laws" by his "purposeful Connecticut related activity." *Zartolas v. Nisenfeld*, 184 Conn. 471, 474, 440 A.2d 179 (1981). But "[t]he term 'transacts business' is 'not broadly interpreted in Connecticut." *LucidRisk, LLC v. Ogden*, 615 F. Supp. 2d 1, 5 (D. Conn. 2009) (quoting *Goudis v. Am. Currency Trading Corp.*, 233 F. Supp. 2d 330, 334 (D. Conn. 2002)). Crucially, "'[t]he transmission of communications between an out-of-state defendant and a plaintiff within the jurisdiction does not, by itself, constitute the transaction of business in the forum state.'" *Ferrara v. Munro*, 585 B.R. 269, 285–86 (D. Conn. 2018) (quoting *Bross Utilities Serv. Corp. v. Aboubshait*, 489 F. Supp. 1366, 1371–72 (D. Conn. 1980), and gathering cases).

Moreover, "'[w]hen examining the corporate officer's activities, the court must look to his personal contacts with the state of Connecticut and not to the contacts made on behalf of any corporate entity of which he was an officer or controlling shareholder.'" *W. State Mech., Inc. v. Paramount Health Res., Inc.*, No. LLICV075002640S, 2008 WL 809021, at *3 (Conn. Super. Ct. Mar. 12, 2008) (quoting *Shafik v. Andria*, No. CV 06 5001472, 2007 WL 1677431, at *6 (Conn. Super. Ct. June 1, 2007)). So it is that "'[p]ersonal jurisdiction may not be asserted over [an officer] of a corporation based on [his] transaction of business in Connecticut where the [officer] did not transact any business other than through the corporation.'" *Ferrara*, 585 B.R. at 288 (quoting *Milne v. Catuogno Court Reporting Servs., Inc.*, 239 F. Supp. 2d 195, 203 (D. Conn. 2002)) (some alterations in original).

Against this framework, it is clear that the Individual Defendants do not "transact business" in Connecticut within the meaning of the long-arm statute. The Individual Defendants each aver in the attached declarations that either: (1) they "have had no involvement or activities with respect to Timothy Martin," *see* Exhibits 3 (Ehrlich Declaration) and 4 (Maheshwari

15

Declaration) at ¶ 3; or (2) their "only involvement and activities with respect to Timothy Martin have been from outside Connecticut" and in their roles working on behalf of certain of the corporate Defendants, *see* Exhibits 1 (Beyazyurek Declaration), 2 (Billings Declaration), and 5 (Masters Declaration) at ¶ 3. The Individual Defendants also state that they have "never entered or traveled to Connecticut in for any dealings with Timothy Martin." *See* Exhibits 1–5 at ¶ 4. They further testify that they've "never had any personal business, actual or proposed, with Timothy Martin." *See* Exhibits 1–5 at ¶ 5. Given the totality of these circumstances, it cannot be said that the Individual Defendants transact business in this state. *See, e.g.*, *Ferrara*, 585 B.R. at 282–90 (finding no personal jurisdiction over nonresident member/manager who never had personal business with the plaintiffs, never travelled to Connecticut, did not regularly transact business or solicit business in Connecticut, and was only involved with plaintiffs as a member/manager of a foreign LLC); *Mitchell v. Patterson*, No. 4001501, 2005 WL 1671528, at *7 (Conn. Super. Ct. June 21, 2005) (jurisdiction under §52-59b(a)(1) will only be found where "the totality of circumstances shows the transaction of business").

   The other sections of the long-arm statute also fail to provide a basis for personal jurisdiction over the Individual Defendants. Section (a)(2) does not apply because the Individual Defendants have not entered the state to engage in any dealings with Plaintiff, much less commit a tortious act against him. As for section (a)(3): even assuming that it could be said that the Individual Defendants committed some tortious act in another state that caused injury to Plaintiff (and the Complaint does not adequately plead such a tortious act), there would still be no basis for jurisdiction because the Individual Defendants do not regularly solicit business, engage in any other "persistent course of conduct, or derive[ ] substantial revenue from goods used or consumed or services rendered, in the state." Conn Gen. Stat. § 52-59b(a)(3)(A). Nor can it be

said that the Individual Defendants "expect[ ]" or "should reasonably expect [any] act [they committed] to have consequences in this state" and they did not, apart from the corporate Defendants, "derive substantial revenue from interstate or international commerce." Id. § 52-59b(a)(3)(B). Moreover, the Individual Defendants do not own, use, or possess "any real property situated within the state" or use a computer or computer network located in Connecticut. *Id.* § 52-59b(a)(4)–(5); Exhibit 1 at ¶¶ 7–8; Exhibit 2 at ¶¶ 7–8; Exhibit 3 at ¶¶ 6–7; Exhibit 4 at ¶¶ 6–7; Exhibit 5 at ¶¶ 7–8. There is, therefore, no basis for personal jurisdiction over the Individual Defendants under the long-arm statute.

Even if there were a basis for personal jurisdiction over the Individual Defendants under the state long arm statute, exercising jurisdiction would still be improper because it would not comply with Fourteenth Amendment due process principles. The due process inquiry looks at two related components: minimum contacts and reasonableness. *Metro Life Ins. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). As for the first component: "'[m]inimum contacts' are established when a defendant 'purposefully avail[s] himself of the privileges and benefits' of the forum state. . . . This requirement prevents defendants from being haled into court based on 'random, fortuitous or attenuated contacts.'" *Ferrara*, 585 B.R. at 291 (citing and quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (some alterations in original). Here, the Individual Defendants have *virtually no contacts* with Connecticut—let alone minimum contacts. They do not regularly solicit or transact business in Connecticut, and did not do anything with respect to Timothy Martin outside their capacity as corporate officers and representatives. It simply cannot be said that the Individual Defendants purposefully availed themselves of the privileges and benefits of the state of Connecticut.

With respect to the reasonableness component, the analysis looks to whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). The essential question is whether a defendant had "fair warning" that his conduct may subject him to suit in the forum state. *See, e.g.*, *Bensmiller v. E.I. DuPont de Nemours & Co.*, 47 F.3d 79, 85 (2d Cir. 1995); *see also World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 297 (1980) ("A defendant may be subjected to personal jurisdiction only where his or her conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."). Here, there are no allegations or facts indicating that the Individual Defendants could have ever anticipated being summoned to a Connecticut court. "To find otherwise would subject any employee who did the slightest amount of business in Connecticut on behalf of his employer to personal jurisdiction by Connecticut." *Ferrara*, 585 B.R. at 292.

For all these reasons, there is no personal jurisdiction over the Individual Defendants. But even if there were jurisdiction, Plaintiff has failed to state a claim against them. The Complaint contains no separate claims concerning the individuals; rather, it simply says in a conclusory manner that they are "also liable under the doctrine of responde[a]t superior as controlling officers of the Defendant corporations." Compl. ¶ 26. Plaintiff misunderstands the concept of respondeat superior. That doctrine provides a basis for holding a corporation liable for the torts of its agents; it has nothing to do with whether an agent or officer can be held liable for the torts of a corporation. *See, e.g.*, *2 National Place, LLC v. Reiner*, 152 Conn. App. 544, 557–58, 99 A.3d 171 (2014) (noting that "under the doctrine of respondeat superior, a master is liable for the willful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business"); *Dias v. Brigham Med. Assocs.*, 438 Mass. 317, 319–20,

780 N.E.2d 447 (2002) ("[R]espondeat superior is the proposition that an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment."). Moreover, even if respondeat superior provided a hook for holding the Individual Defendants liable for the corporate Defendants' torts (and it does not), the claims against the individuals would still fail because there are no viable claims against the corporate Defendants (as discussed in Sections II–IV above).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted.

Respectfully submitted,

*/s/ David Norman-Schiff*
David Norman-Schiff (ct30082)
James I. Glasser (ct07221)
Wiggin and Dana LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
(203) 498-4400
(203) 782-2889 fax
dnorman-schiff@wiggin.com
jglasser@wiggin.com

*Attorneys for Defendants*